UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| ROBERT SIMMONS, ) | |
| ) | |
| Petitioner, ) | |
| v. ) | No. 1:06-cv-1746-DFH-TAB |
| ) | |
| ED BUSS, Superintendent, ) | |
| ) | |
| Respondent. ) | |

**Entry Denying Petition for Writ of
Habeas Corpus and Directing Entry of Judgment**

For the reasons explained in this Entry, the petition of Robert Simmons ("Simmons") for a writ of habeas corpus must be **denied** and this action dismissed.

**I.**

Simmons was convicted in an Indiana state court of murder and sentenced to a term of 55 years. Simmons' conviction was affirmed on direct appeal in *Simmons v. State,* 714 N.E.2d 153 (Ind. 1999)(*Simmons I*). The Indiana Supreme Court summarized the evidence and features of Simmons' trial:

> Simmons frequently visited his friend Melissa Fuqua to use the telephone in her home. On May 5, 1997, in the course of one of these visits, Simmons encountered Brown and another man entering the house as he was leaving. According to Simmons, the two had threatened him with guns earlier that year. Shortly thereafter, Brown left the house for his car. As Brown and Simmons passed on the porch, Brown allegedly called Simmons a "punk bitch."  Brown then entered his car, and Simmons produced a .38 caliber handgun and fired five shots at Brown. Simmons later testified that he thought Brown was retrieving a gun from his car. Brown died as a result of gunshots to the head.
>
> Fuqua's cousin and a friend were standing on Fuqua's porch when the shots were fired, and both testified that they saw Simmons shoot Brown. Fuqua was in the house when the shots were fired, but ran to the porch where Rashida, her eight-year-old daughter, was screaming "He killed him." As Fuqua tried to calm Rashida, the child repeated that Simmons had killed Brown. At trial, Fuqua related these events, including what the child had said. Rashida did not testify.

>When the police arrived at the scene of the crime they found an empty holster lying on Simmons' car seat. Police photographs of the holster and the holster itself were admitted into evidence over objection. The jury was instructed on the issue of self-defense, but convicted Simmons of murder.

*Simmons I,* at 154. The trial court's denial of Simmons' petition for post-conviction relief was affirmed on appeal in *Simmons v. State,* No. 49A05-0510-PC-00582 (Ind.Ct.App. 2006)(*Simmons II*).

In his direct appeal, Simmons argued that the trial court committed error by admitting irrelevant and prejudicial evidence and also by admitting hearsay evidence of a child's statement. In *Simmons II*, Simmons argued that he had been denied the ineffective assistance of trial and also in *Simmons I.* Simmons now seeks a writ of habeas corpus. His claims here are the same as those presented in *Simmons II.*

## II.

### A.

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a) (1996). See *Conner v. McBride,* 375 F.3d 643, 649 (7th Cir. 2004).

Review of the habeas petition here is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lambert v. McBride,* 365 F.3d 557, 561 (7th Cir. 2004). Under the AEDPA, this court may not grant § 2254 habeas relief on any ground previously disposed of on the merits by a state court unless the state decision "was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding." 28 U.S.C. § 2254(d)(1)-(2). *Early v. Packer,* 537 U.S. 3, 7-8 (2003); *Lambert,* 365 F.3d at 561.

### B.

The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial."*Strickland v. Washington,* 466 U.S. 668, 684 (1984).For a petitioner to establish that "counsel's assistance was so defective as to require reversal" of a conviction or a sentence, he must make two showings: (1) deficient performance that (2) prejudiced his defense. *Strickland,* 466 U.S. at 687. With respect to the first prong, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins v. Smith,* 539 U.S. 510, 521 (2003) (quoting *Strickland,* 466 U.S. at 688). In addition, the performance of counsel under *Strickland* should be evaluated from counsel's perspective at that time, making every effort to "eliminate the distorting effects of hindsight." *Id.* at 523 (quoting 466 U.S. at 688); *see also Kokoraleis v. Gilmore,* 131 F .3d 692, 696 (7th Cir. 1997). With respect to the prejudice requirement, the petitioner

must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694; *see also Benefiel v. Davis,* 357 F.3d 655, 661 (7th Cir. 2004).

The foregoing outlines the well known features of *Strickland's* two-prong test. In the context of claims such as Simmons presents, however, the AEDPA raises the bar.

> The bar for establishing that a state court's application of the *Strickland* standard was "unreasonable" is a high one: we have stated on prior occasion that "'*only a clear error* in applying *Strickland* would support a writ of habeas corpus,'" *Dixon v. Snyder*, 266 F.3d 693, 700-01 (7th Cir. 2001) (quoting *Holman v. Gilmore*, 126 F.3d 876, 882 (7th Cir. 1997)), because "*Strickland* calls for inquiry into degrees," thereby "add[ing] a layer of respect for a state court's application of the legal standard." *Whitehead v. Cowan*, 263 F.3d 708, 731 (7th Cir. 2001) (emphasis added). Accordingly, this Court *is obligated to affirm the district court's decision to deny the writ, so long as the Wisconsin Court of Appeals* "*t[ook] the [constitutional standard] seriously and produce[d] an answer within the range of defensible positions*." *Mendiola v. Schomig,* 224 F.3d 589, 591 (7th Cir. 2000) (emphasis added).

*Murrell v. Frank,* 332 F.3d 1102, 1111-12 (7th Cir. 2003).

## C.

*Trial Counsel.* Simmons claims that his trial counsel was ineffective for failing to object: 1) to the erroneous voluntary manslaughter instruction and failing to tender a correct one; 2) when the trial court did not define "sudden heat" for the jury; and 3) when Simmons was denied his right of allocution at sentencing. These specifications of ineffective assistance of counsel were asserted in *Simmons II.* They were also rejected.

> ! The Indiana Court of Appeals held, first, that the instruction was an incorrect statement of the law. It was incorrect because it included "sudden heat" as an element, but was not fundamentally erroneous because the instruction also explained that "sudden heat" was a mitigating factor. *Simmons II,* at p. 6. The court then reviewed the circumstances under which murder can be reduced to voluntary manslaughter. This can occur when there is evidence of "sudden heat" and where the State does not negate its existence beyond a reasonable doubt. The Indiana Court of Appeals then reviewed the evidence as to the shooting and as to the past contact between Simmons and Brown. In doing so, it concluded that "there is no evidence of sudden heat." *Simmons II,* at p. 7 (noting that Brown's taunting words alone were not sufficient provocation, that Simmons returned to Fuqua's house knowing that Brown was there, undermining the claim that he was scared of Brown, and that there had been no altercation between Simmons and Brown since one year before the shooting).The Indiana Court of Appeals concluded that the incorrect instruction concerning voluntary manslaughter was not prejudicial to Simmons

because, without evidence of sudden heat, there was no evidence upon which the jury could conclude that what would otherwise be murder could be reduced to voluntary manslaughter. "Where there is no evidence of sudden heat, an incorrect instruction on voluntary manslaughter is not reversible error." *Id.* (citing *Burris v. State,* 590 N.E.2d 576, 581 (Ind.Ct.App. 1992)). This is a finding that Simmons was not prejudiced by the erroneous instruction as to voluntary manslaughter and the absence of an instruction defining "sudden heat." Simmons has not established a reasonable probability that if trial counsel had objected to the trial court's failure to define "sudden heat" for the jury (or if the instruction he tendered had included such a definition), the outcome would have been different.

! Simmons' final claim of ineffectiveness at trial is that his counsel did not object when Simmons was denied the right of allocution at sentencing. The Indiana Court of Appeals reviewed this issue and concluded that Simmons did not demonstrate that he was remorseful and that he could not show that "his substantive rights have been adversely affected by his lack of opportunity to make a statement prior to sentencing." *Simmons II*, at pp. 8-9. This is precisely in accord with the Court of Appeals' view of the question, as reviewed and expressed in *United States v. Luepke,* 495 F.3d 443, 447 (7th Cir. 2007)(discussing Fed.R.Crim.P. 32 and agreeing that although "the right of allocution is deeply rooted in our legal tradition and an important, highly respected right," it is "neither constitutional nor jurisdictional")(citing *United States v. Reyna,* 358 F.3d 344, 349 (5th Cir. 2004)).

As shown above, as to each specification of ineffective assistance of counsel at trial, the Indiana Court of Appeals in *Simmons II* "took the constitutional standard seriously and produced an answer within the range of defensible positions." *Mendiola v. Schomig,* 224 F.3d 589, 591 (7th Cir. 2000). Because this court cannot find that the Indiana Court of Appeals "unreasonably applie[d] [the *Strickland* standard] to the facts of the case," this court must deny Simmons' petition for habeas relief as to his claim of ineffective assistance of counsel at trial. *Murrell,* 332 F.3d at 1111 (citing *Bell v. Cone,* 535 U.S. 685, 694 (2002)).

*Ineffective appellate counsel.* Simmons also claims ineffectiveness of appellate counsel. Where a defendant claims that counsel failed to raise the correct issues on appeal, the question is whether appellate counsel failed to raise a significant and obvious issue without a legitimate strategic purpose. *Franklin v. Gilmore,* 188 F.3d 877, 884 (7th Cir. 1999).

Simmons' specific claims of appellate ineffectiveness are that appellate counsel did not: 1) argue ineffectiveness by trial counsel for the handling of the voluntary manslaughter instruction and the jury's request for a definition of "sudden heat"; 2) argue fundamental error in the erroneous voluntary manslaughter instruction and the failure to give the jury an instruction on "sudden heat"; and 3) raise any sentencing arguments on appeal when Simmons was denied his right of allocution.

The Indiana Court of Appeals analyzed these claims under *Strickland* and concluded that Simmons did not demonstrate prejudice as a result of appellate counsel's omissions on direct appeal. *Simmons II*, at p.10. The post-conviction courts correctly recognized the *Strickland* standard, *Simmons II* at p.4, reasonably applied that standard to the claims of ineffectiveness of both trial and appellate counsel, and did not reach a result which was either "contrary to" or an "unreasonable application of" *Strickland.* The Indiana Court of Appeals focused on the second prong or the "prejudice" component of a *Strickland* analysis. In each instance–meaning as to each specification–the Indiana Court of Appeals found the element of prejudice absent. *See Conner,* 375 F.3d at 666 ("To put it simply, with respect to the complaints regarding motions practice and alleged failures to object to certain evidence and opposing counsel's arguments, it is impossible for us to say that the [post-conviction] court unreasonably held that Conner failed to meet his burden to show either counsels' deficiency or, even assuming error, any discernable prejudice."). Simmons' contentions with respect to the performance of his attorney in *Simmons I* are dependent on the viability of claim of ineffectiveness of counsel at trial. The Indiana Court of Appeals concluded that the lack of merit to the claim of ineffectiveness of counsel at trial showed that the failure to include that claim in his direct appeal did not affect the outcome of the appeal. *Simmons II,* at p. 10. Once again, the Indiana Court of Appeals took the constitutional standard seriously and produced an answer within the range of defensible positions. Because only a clear error in applying *Strickland's* standard supports a writ of habeas corpus, and because no clear error–and no error at all–occurred in *Simmons II,* Simmons is not entitled to federal habeas relief based on his specifications of ineffective assistance of counsel in his direct appeal.

### III.

Simmons' conviction withstood challenge in the Indiana courts, and thus a presumption of constitutional regularity attaches to it. *See Farmer v. Litscher,* 303 F.3d 840, 845 (7th Cir. 2002) (citing *Parke v. Raley,* 506 U.S. 20, 29-30 (1992)); *Milone v. Camp,* 22 F.3d 693, 698-99 (7th Cir. 1994) ("Federal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law").[1] This court has carefully reviewed the state court record in light of Simmons' claims and has given such consideration to those claims as the limited scope of its review in a habeas corpus proceeding permits. Simmons' petition for a writ of habeas corpus is therefore **denied.** Judgment consistent with this Entry shall now issue.

So ordered.

_____
DAVID F. HAMILTON, Chief Judge
United States District Court

Date:   8/20/2008

---

[1] Obviously, this is not a presumption related to the AEDPA, but is "the 'presumption of regularity' that attaches to final judgments, even when the question is waiver of constitutional rights." *Parke v. Raley,* 506 U.S. at 29 (citing *Johnson v. Zerbst,* 304 U.S. 458, 464, 468 (1938)).